CASE 91.—ACTION BY RALPH A. LINDSAY'S ADMINIS-
TRATOR AGAINST THE METROPOLITAN LIFE
INS. CO. TO RECOVER ON A POLICY ON THE LIFE
OF THE DECEDENT.—February 22.

# Metropolitan Life Ins. Co. v. Lindsay's Adm'r

Appeal from Fayette Circuit Court.

WATTS PARKER, Circuit Judge.

Judgment for plaintiff. Defendant appeals. Affirmed.

1. Insurance—Life Policy—Payment of Premium.—A life policy
issued to insurer's soliciting agent stipulated that the insurer
assumed no obligation until the first premium had been paid.
The superintendent of the insurer paid the first premium, and
the agent was charged with it by having the same deducted
from commissions due him as soliciting agent. The insurer
received the premium and accepted it. Held, that the first
premium was paid, within the stipulation of the policy.
2. Same.—A life policy issued to insurer's soliciting agent stipu-
lated that insurer assumed no obligation until the first
premium had been paid. The superintendent of the insurer
paid the first premium. The insurer accepted it. The insurer
had a rule prohibiting the return of policies issued on the
lives of superintendents and agents. Held, that the first
premium was paid, rendering the policy enforceable.

J. S. BOTTS and ALLEN & DUNCAN, attorneys for appellant
Life Ins. Co.

The substantial question on this appeal is whether the policy
ever attached, and the appellant claims a reversal of the judgment
on the following grounds:

1. Because there was no completed or consummated contract
of insurance between the parties binding either the appellant
company or the applicant for insurance, as the premium on the

Metropolitan Life Ins. Co. v. Lindsay's Adm'r.

policy in suit was never paid by the said Ralph A. Lindsay or by anyone else at his instance or request or with his consent or knowledge, and there was no obligation on his part to pay said premium; and further that the policy was never duly delivered during the life-time and good health of the person on whose life the insurance was applied for or any other time; and that until the performance of these two conditions precedent, as required by the terms of the policy, no agreement had been entered into binding either insured or the insurer and up to that point either party had a right to withdraw from the negotiations without liability to the other. The element of mutuality so essential to the validity of all contracts was always lacking.

2. That the finding of the jury was induced by' errors of law in the instructions prejudicial to the appellant, to which errors the finding in question are directly and certainly traceable as the inducing cause.

3. That the court in refusing to give to the jury the several instructions asked for by the appellant company erred in its ruling as to each of the instructions so asked.

4. That the court erred in each of the instructions given by it to the jury.

5. Errors in the admission and rejection of evidence.

6. That the verdict and judgment was not sustained by sufficient evidence and was contrary to law.

7. Error of the court in overruling defendant's demurrer to plaintiff's petition.

AUTHORITIES CITED.

St. Louis Mutual Life Insurance Co. v. Kennedy, 6 Bush, 450; Mutual Life Insurance Co. of N. Y. v. Lucas, 25 Ky. Law Rep., vol. 2, p. 2052; Mutual Life Insurance Co. of N. Y. v. Sinclair, 24 Ky. Law Rep., vol. 2, p. 1543; Dickerson's Adm'r, &c., v. The Prudential Savings & Life Assurance So., &c., 21 Ky. Law Rep., 611; New York Life Ins. Co. v. Leavy's Adm'r, 92 S. W., 325; Blue Grass Insurance Co. v. Cobb, 24 Ky. Law Rep., 2132; May on Insurance, vol. 1, secs. 56, 61 and 55; Wm. Whiting, Adm'r v. Mass. Mutual Life Ins. Co., 129 Mass., 240, (Sept. 24, 1879); Eliab W. Badger, Adm'r v. Amer. Popular Life Ins. Co., 103 Mass., 244; Dunham and others v. Moss, 32 N. E., 116, and 158 Mass., 132; Brown v. Massachusetts Mutual Life Ins. Co., (59 N. H., 298) 47 Amer, Reports, 205; Mutual Reserve Fund Life Ass'n v. Simmons, 107 Fed. Rep., 418; Mutual Life Insurance Co. of N. Y. v. James Young, Adm'r of McPhearson Young, 90 U. S. Reports, p. 152, Law Co-op. Ed., 23rd vol.; The Piedmont & Arlington Life Ins. Co. v. Ewing, 92 U. S., vol. 23, Law Co-op. Ed.,

Metropolitan Life Ins. Co. v. Lindsay's Adm'r.

p. 610; McMaster v. New York Life Ins. Co., 99 Fed. Rep., 856; Gidding v. Ins. Co., 102 U. S., 108; Pottsville Mutual Fire Ins. Co. v. Menneque Springs Imp. Co., 100 Pa. St. Rep., 137; Real Estate Mut. Fire Ins. Co. v. John Roessle, 1 Gray (Mass.) 336; James Mulrey v. Shawmut Mut. Fire Ins. Co., 4 Allen (Mass.) 116; Insurance Co. v. Young, Adm'r, 23 Wallace (U. S.) 85; Hoyt v. Mutual Benefit Ins. Co., 98 Mass., 539; Markey v. Mut. Benefit Ins. Co., 103 Mass., 78; Marion National Bank v. Abell's Adm'r, 88 Ky., 428.

FORMAN & FORMAN, attorneys for appellee.

POINTS AND AUTHORITIES.

1. An unconditional application for life insurance constitutes an offer to contract, and an unqualified acceptance of the application constitutes an acceptance of the offer; and the contract immediately becomes completed subject only to such condition or conditions as may be stated in the application and agreed upon by the parties as essential to be performed before the attachment of the risk. The tender of a policy of the exact kind applied for—in cases when delivery and payment of premium are made essential under the application to the consummation of the contract—imposes upon the applicant an enforceable obligation to pay the premium and take the policy, and if he declines, the company has an immediate right of action therefor, as in such cases no right of inspection with the incident right of acceptance or rejection after issuance of the policy exists in the applicant. (Western Assurance Co. v. McAlpin, 77 Am. St. Rep., 429.)

2. When the minds of the parties have met upon the terms of the contract through an unqualified acceptance of the offer contained in the application, and a policy is issued in conformity therewith and forwarded for delivery upon the payment of the premium (which under the application is the only condition annexed to the attachment of the risk) the contract becomes consummated whenever the premium is paid, notwithstanding the policy may never have been manually transferred by the agents of the company to the insured. Manual possession of the policy is not essential to complete the contract even when the application provides that "delivery" of the policy is a condition precedent to the completion of the contract. (Phoenix Assurance Soc. v. McAuthor, 6 Am. St. Rep., 154; N. Y. Life Ins. Co. v. Babcock, 69 Am. St. Rep., 134; Mutual Life Ins. Co. v. Thompson, 94 Ky., 253; Dailey v. Preferred etc., Association, 26 L. R. A., 171; May on Insurance, sec. 60.)

3. Payment of the premium by a third party, who has no

insurable interest in the life of the applicant, after the terms of the contract between the applicant and the company have been mutually agreed upon and accepted, does not invalidate the contract of insurance, whether the payment was made with or without the knowledge or request of the applicant. (Galvin v. Union Central Life Ins. Co., 115 Ky., 547; May on Insurance, sec. 352; Prudential Ins. Co. v. Cummins' Adm'r, 19 Ky. Law Rep., 1770; Mutual Life Ins. Co. v. Allen, 52 Am. Rep., 245; Wheeler v. Waterton &c., Ins. Co., 131 Mass., 1.)·

4. Applying these principles to the evidence appearing in the record, the trial court's instructions contained the whole law applicable and the finding of the jury was justified, even under the appellant's theory of the facts, which is that the amount of the premium was paid with H. W. Pitman's money and without the knowledge or request of the applicant, for it must be assumed in the consideration of the case that the great preponderance of the evidence established the fact that the payment was made to and accepted by the company as premium and not as penalty.

5. But the evidence warrants the conclusion that the premium was actually paid out of Lindsay's own earnings as an employee of the company; and with his knowledge and consent; and that under this theory of the facts the jury found their verdict under the third instead of the fourth instruction. (See testimony of Mr. and Mrs. Lindsay and direct examination of H. W. Pitman, q. and a. 33, 34.)

6. Being an employee of the company and presumptively familiar with its rules, it may be fairly inferred that Lindsay knew of the payment of the premium whether made with his money or Pitman's; and after June 10th, when same was remitted, his promises to pay, as claimed by Montague, were intended and were in fact promises to reimburse Pitman and not to pay the company, if it be true that Pitman's money was used in payment of the premium.

7. Lindsay formally agreed to accept the policy when explained to him by the agent, Montague, and promised to pay the premium. No case is cited, nor can any be found, as we believe, where it was ever held that when such an acceptance existed, the risk did not attach immediately upon payment of the premium, even though paid by a third party without the knowledge or request of the applicant.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

This action was instituted by appellee upon policy
No. 381,557 of insurance upon the life of Ralph A.
Lindsay, of Lexington, Ky. The policy was dated
May 13, 1905, and was issued upon an application of
May 5, 1905. Lindsay lost his life, by accidental
drowning, on the 21st day of July of the same year.
Appellant defended, and alleged that the assured,
Ralph A. Lindsay, had never paid his first, or any,
premium on the policy, and that it was never delivered
to him; that under the provisions of the policy the
same never became binding on it, and quoted the fol-
lowing provision: "No obligation is assumed by this
company upon this policy until the first premium has
been paid, and the policy duly delivered, nor unless
upon the date of delivery the insured is alive and in
sound health." The answer was controverted by
appellee, and a trial was had, which resulted in a
verdict for appellee for the amount of the policy.

The appellant assigns as reasons for a reversal of
the judgment the following grounds: First. The court
erred in its instructions to the jury, and also erred
in refusing to instruct the jury as requested by the
appellant. Second. The court erred in the admission
and rejection of evidence. Third. That the verdict
and judgment are not sustained by sufficient evidence,
and are contrary to law.

It appears from the proof that appellant had an
office in Lexington, Ky.; that one Pitman was its gen-
eral superintendent in charge; one Montague was the
assistant superintendent, and R. A. Lindsay, the de-
ceased was one of the soliciting agents for appellant
at that point; that on or about the 2d day of April,
1905, Lindsay made application for the policy sued

on, which was sent to the company by the superintendent on the 13th day of May. The policy was issued and reached Lexington about the 14th of the same month. The terms of the policy were in exact accordance with those of the application. The assured delivered the policy and the receipt for $15.12, the first premium on the policy, to his mother for safe-keeping. The assured ceased to be agent for the company the latter part of June, and left the city, and while away met his death.

The appellee introduced one Miss Richardson, who testified that she was the stenographer and book-keeper in the appellant's office in Lexington during May and June, 1905, that she did most of the work on the books, and that the rest was done by Mr. Pitman. She also testified that one of her duties was to draw a report, from the books, and forward it to the home office, showing what collections had been made. One of the books of the appellant, kept at its Lexington office, was presented to her, and she stated that the following entry was made in that book by the direction of Mr. Pitman, to-wit: "Policy No. in full, 381,557. Name of insured, Lindsay. Premium, date when due, May 13. When paid, June 10. How paid, semi-annually. First year, $15.12. Renewal (heading nothing under it). Kind of policy, O. L. Γ. Commission paid (nothing under the heading). To whom paid, Lindsay. Rate, 40. Amount, $6.05. State in which insured now resides, Kentucky."

Mr. Pitman testified concerning the application made by the insured, saying that he forwarded it to the home office, and that, on the return of the policy, on the 14th day of May, he delivered it, with the receipt for the amount of the premium, to his assistant, Montague, for collection of the premium and the delivery of the policy and receipt to the assured, and

that the premium was not collected. He stated that
he did not know personally about that, but it was so
reported by his assistant. He also stated that, when
Mr. Lindsay ceased to work as agent for the company,
he was in arrears to the amount of $20 or $30, and
the premiums on this policy, and the one for $500,
payable to the assured's mother, were not included
in the amount named; that he informed the mother
and father that their son was behind with the com-
pany for the purpose of seeing if the matter could be
arranged and settled without proceeding against the
bonding company that was the surety of R. A. Lind-
say; that they came to the office to see him, and they
agreed to settle the amount he was in arrears with
the company, but they did not. He also told them
and Don Forman, one of the attorneys for appellee,
that R. A. Lindsay had never paid the premium on
this policy. He admitted that the entry in the book,
as read by Miss Richardson, was correct, and that
he paid the premium to the company by check the
17th day of June, or, at least, within 30 days from the
receipt of the policy, within which time he was re-
quired to make his report and settlement. The wit-
ness stated that the reason he directed Miss Richard-
son to make the entry in the book referred to, and
why he paid the premium by his own check, was that
the company required him to do so, under the follow-
ing rule, of September 17, 1903: "All applications
submitted after this date on the lives of superintend-
ants, assistant superintendents, and agents, or on
members of their families, must be with the under-
standing that, if the policy is issued as applied for,
it will be accepted. The return of such policies as 'Not
taken' will not be permitted in the ordinary depart-
ment or intermediate branch. In a number of
instances where we have been under the painful neces-

sity of holding the superintendent responsible for the first premium on a 'Not taken' policy on the life of an agent, the statement has been made that since the application was written the agent had been 'finalled,' and that therefore the policy could not be delivered. We cannot accept this as a reason for not enforcing the rule. It is reasonable to assume that applications on the lives of our employes are submitted in good faith, that the insurance is not forced upon them, but is really wanted, and that they possess the means to pay for it. Otherwise the application should not be submitted. No hardship then entails upon the agent in the demand of the superintendent to deposit with the application the amount required to meet the first premium. If he fails in this precaution, intended for his own protection, he certainly ought not to complain of the personal loss this failure incurs.''

The witness stated several times that he paid the premium on this policy for the assured, but he also stated that, after the date of the rule above copied. the company established another rule with reference to its agents, and sent it out in the form of a letter; that he did not have that letter himself, but one was sent, from the home office, to its attorneys in this case at Lexington, and that it was lost or misplaced. The court permitted the witness and one of the attorneys to testify as to the contents of it. Pitman stated that the contents of the letter was: ''That the agent and the employe of our company taking out the policy did not accept it, refusing to accept, or wouldn't accept the policy. That we were liable to the company equal to the amount of the first premium.'' The attorney testified, in substance, the same, except he stated that: ''When an agent delivered a policy without collecting the premium, they were to be fined in an amount equal to the premium.''

Montague, the assistant, testified that, when the policy was received from the home office, it was delivered to him by Pitman, with the receipt for the amount of the premium, for collection of the premium on delivery of the policy. The next day Lindsay was in his office, he showed him the policy, which was examined by him, and he announced himself satisfied with it, and said that he would pay the premium on the next Thursday. The witness took the policy and receipt and put it in a pigeonhole of his desk. The next day he discovered they were gone. He met Lindsay and asked him if he had them. Lindsay said "Yes," that he had taken them home to his mother to see if she was satisfied with the policy. Witness told Lindsay that he must bring the papers back or pay the premium. Lindsay responded that he would. He frequently approached Lindsay about it afterwards, with a like result. He stated that the premium was never paid to him.

The father and mother of the deceased both testified that they went to see Pitman at his request, who told them of the shortage of their son, but they could never get Pitman to tell them the amount  They asked him how he got behind. He answered that "If Ralph had not been so prone to take out so many policies for himself, or for his family, he would have more coming to him." Pitman concedes that, in effect, he made this statement to them when they were in his office. They, and also Don Forman, testified that Pitman never, before the death of Ralph, said anything with reference to the premium on this policy not having been paid. We have substantially stated the evidence of each witness that was introduced during the trial.

The court gave the jury six instructions, which are as follows:

"(1) The jury should find for the plaintiff, if the jury believe from the evidence that the policy of the defendant, dated the 13th day of May, 1905, was delivered after its issual to the decedent, Ralph A. Lindsay, and that the premium thereon of $15.12 was paid to the defendant.

"(2) The jury should find for the defendant, unless the jury believe from the evidence that the policy of the Metropolitan Life Insurance Company, dated the 13th day of May, 1905, was delivered to Ralph A. Lindsay, and that said premium thereon of $15.12 was paid to the defendant.

"(3) If the policy mentioned in the first and second instructions was issued by the defendant, and, after being so issued came into the possession of Ralph A. Lindsay, this was not a delivery of said policy, unless the premium of $15.12 was paid; but, if said policy came into the possession of said Lindsay, and after it came into his possession, said premium was paid to and accepted by defendant, said policy, after said payment and acceptance, became a policy delivered to said Lindsay. And if said policy was so in the possession of said Lindsay, and if said payment of said premium was so made to and accepted by the defendant, the jury should find for the plaintiff.

"(4) If the policy mentioned in the foregoing instructions was in the hands of Ralph Lindsay, and, being so in his hands, the premium due on said policy of $15.12 was paid by W. H. Pitman to the defendant, as the premium due on said policy, and if the payment so made was accepted by said defendant as the payment of the premium due on said policy, the jury should find for the plaintiff.

"(5) If the jury find for the plaintiff, they should find for him in the sum of $984.88, with interest from the 5th day of September, 1905, until paid.

"(6) If W. H. Pitman paid to the defendant $15.12, the amount of the premium due on the policy mentioned in the foregoing instructions, and if this payment was made by Pitman as a penalty due from him to the defendant, and not as a payment of the premium on the policy issued to the defendant, this was not a payment of such premium, and the jury should find for the defendant."

To arrive at a proper understanding of the issues made in this case, it is necessary to refer again to the terms of the policy and the answer of appellant. It is recited in the policy that the company assumes no obligation or risk until the first premium is paid and the policy duly delivered, nor unless upon the date of delivery the insured is alive and in sound health. In the defendant's answer it denied that the first premium was paid by R. A. Lindsay, and that the policy was ever delivered to him. The answer did not make any issue as to the health of the assured at the time of the delivery of the policy. This statement obviates the necessity of discussing the objections of appellant's counsel to the instructions of the court in omitting to submit to the jury the question of the health of the assured at the time of the delivery of the policy.

The only questions at issue that could properly be submitted to the jury in the instructions were whether the premium had been paid to and accepted by the company, and the delivery and acceptance of the policy by the assured. That assured was satisfied with the terms of the policy and agreed to pay the premiums was proven without contradiction. There was some proof introduced from which the jury might have concluded that he had settled, or paid, the premium; he being charged with it, and it being deducted from the commissions due him as agent in soliciting insurance, and in this way made the amount in arrears

to the company larger. It is true that Pitman stated that the premiums on the policies were not included in the arrears, but his statement to the father and mother that, "if Ralph had not been so prone to take out insurance for himself, or his family, he would have more coming to him," and the further fact that, in the conversation he had with them before the death of Ralph, he never at any time spoke of the fact that Ralph had failed to pay the premiums on the policies. From the proof it is certain that the company received and accepted from Pitman the premium' on the policy of an amount equal to the premium as a penalty.

Appellant's counsel contends that, although Pitman, the superintendent, might have paid the premium for Lindsay, if it was done without his knowledge or consent, it did not operate as a payment of the premium, so far as Lindsay was concerned, and it never made the policy a binding contract. It is not necessary for us to determine this question, in view of the writing or rule copied above. If it was paid by Pitman as a premium upon the policy, it is reasonable to suppose that it was not done without the knowledge or consent of Lindsay. Lindsay was an agent of the company, and so was Pitman. They were presumed to know the rules of the company. If Pitman sent the application on to the company without first requiring Lindsay to make a deposit for the amount of the premium, and Lindsay and Pitman both knew that Pitman was responsible to the company for the amount of the premium, thereby he became the surety of Lindsay in that matter, and, when Pitman paid it, he had a binding obligation against Lindsay for the repayment to him of the amount. The company had received the premium and accepted it, and under the rule of the company it mattered not who

paid the premium, whether the assured or superintendent in charge of the office—one or the other had to pay it. The policy could not be returned as "Not taken."

By the sixth instruction the court told the jury that, if Pitman paid the amount of the premium to the company as a penalty for the violation of the rule of the company, and not as the premium on the policy, they would find for the defendant. The jury decided this question against appellant.

In view of what we have said, about the issues involved and the instructions given by the court, it makes it unnecessary to consider the instructions offered by appellant. Those given were as favorable to the appellant as it had a right to ask. We find no error committed by the court in the admission or rejection of evidence.

For these reasons the judgment of the lower court is affirmed.